UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 07-14059-CR-GRAHAM

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CARL ELLIOTT, JR.,

    Defendant.
_____/

<u>ORDER</u>

**THIS CAUSE** came before the Court upon Defendant's Motion to Dismiss Indictment [D.E. 18].

### I. <u>BACKGROUND</u>

On August 16, 2007, Plaintiff, the United States, filed a one-count Indictment against Defendant Carl Elliott, Jr., alleging violations of the Sex Offender Registration and Notification Act, 18 U.S.C. s.2250(a) (SORNA) [D.E. 1]. The Indictment alleges, <u>inter</u> <u>alia</u>, that in or about November 2006, Carl Elliott, Jr., did travel in interstate commerce, and did knowingly fail to register or update his registration as required by SORNA. According to the Indictment, the Defendant was required to register under SORNA when he traveled to Florida since he was previously convicted of attempted sexual assault of a minor in Pinal County, Arizona.

The Defendant filed the instant Motion to Dismiss the Indictment which raises four separate grounds for dismissal, as follows: 1) SORNA's registration requirements are an impermissible

exercise of Congress' power under the Commerce Clause; 2) application of SORNA to the Defendant is an impermissible retroactive application in violation of the Ex Post Facto Clause; 3) SORNA is a violation of the Non-Delegation Doctrine; and, 4) SORNA is a violation of the Due Process Clause [D.E. 18]. The Government then filed an Opposition to the Motion to Dismiss the Indictment [D.E. 22],

On September 21, 2007, this Court held a hearing and directed the Parties to submit supplemental briefs on the issues raised in the Defendant's Motion to Dismiss [D.E. 24]. The Defendant then filed a Memorandum in Support of its Motion to Dismiss [D.E. 25], the Government filed a Supplemental Response [D.E. 26], and each Party filed a Reply [D.E. 27, 28].

**THE COURT** has considered the Motion, the supplemental filings, the pertinent portions of the record, and has been fully advised in the premises.

## II. LAW AND DISCUSSION

### A. SORNA

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109-248. Title I of the Act entitled the Sex Offender Registration and Notification Act (SORNA), which requires, among other things, that sex offenders register in jurisdictions in which they reside and/or work. See 42 U.S.C. § 16918. More specifically, SORNA provides, in relevant

part,

> § 16913. Registry requirements for sex offenders
>
> (a) In general
>
> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
>
> (b) Initial registration
>
> The sex offender shall initially register--
>
> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
>
> (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.
>
> (c) Keeping the registration current
>
> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.
>
> (d) Initial registration of sex offenders unable to comply with subsection (b) of this section
>
> <u>The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.</u>

3

42 U.S.C. § 16918. (emphasis added). Additionally, SORNA creates new federal crimes for those individuals who fail to register despite being required to do so. 18 U.S.C. § 2250(a) provides:

> (a) In general-Whoever-
>
> (1) is required to register under the Sex Offender Registration and Notification Act:
>
> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States: or
>
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in Indian country; and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act:
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

Further, on February 28, 2007, pursuant to 42 U.S.C. § 16913(d), the Attorney General of the United States issued the following statement regarding the application of SORNA:

> § 72.3 Applicability of the Sex Offender Registration and Notification Act.
>
> The requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act.

28 C.F.R. § 72.

Based upon the Attorney General's statement regarding the applicability of SORNA, Defendant herein, as well as numerous other defendants before various federal district courts, have challenged the constitutionality of the SORNA registration requirements and the prosecution of defendants for alleged violations of said requirements. The Court will examine each argument raised by the Defendant, in turn.

**B.  Violation of the Commerce Clause**

Defendant first argues that 18 U.S.C. § 2250 is unconstitutional because it violates the Commerce Clause of the U.S. Constitution. More specifically, Defendant asserts that the registration requirements set forth in SORNA apply to purely local conduct and therefore are an unlawful and unauthorized exercise of congressional power. This argument has been raised by many defendants facing SORNA violation allegations and has been rejected by almost all courts who have addressed it. See e.g., United States v. Madera, 474 F.Supp.2d 1257, 1265 (M.D.Fla.2007); U.S. v. Templeton, 2007 WL 445481 at *3-*4 (W.D. Okla., Feb. 7, 2007); U.S. v. Hinen, 487 F. Supp. 2d 747 at 757-58 (W.D. Va. 2007); U.S. v. Mason, 510 F. Supp. 2d 923 at 931-32 (M.D. Fla. 2007). The Court agrees with the reasoning of those courts and for the following reasons concludes that 18 U.S.C. § 2250 does not violate the Commerce Clause.

The Constitution delegates to Congress the power "to regulate

5

Commerce with foreign Nations, and among the several States, and with the Indian tribes." U.S. Const., art. I. § 8, cl. 3. The Supreme Court, in U.S. v. Lopez, defined three categories of activity that Congress may regulate pursuant to its Commerce Clause authority: (1) "the use of channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "activities having a substantial relation to interstate commerce." United States v. Lopez, 514 U.S. 549, 558-59, 115 S.Ct. 1624, 131 L.Ed. 2d 626 (1995).

In examining whether SORNA violates the Commerce Clause, some courts have analyzed SORNA's nexus to interstate commerce, under the second prong of Lopez, while others have examined it under the third prong of Lopez. See e.g., U.S. v. Madera, 474 F. Supp. 2d 1257 (M.D. Fla. 2007). The Court concludes that SORNA is a valid exercise of Congress' commerce power under the second Lopez prong.[1] In particular, under the second prong of Lopez, Congress has the authority to regulate "...persons or things in interstate commerce,

---

[1] The Eleventh Circuit's decision in U.S. v. Ballinger, 395 F. 3d 1218 (11th Cir. 2005), directs that when the statute includes the language "in commerce" as opposed to "affecting commerce" the Commerce power invoked by Congress falls within the first two Lopez categories, i.e. regulation of the channels and the instrumentalities of commerce, and not the third Lopez prong. Id. at 1231. Accordingly, the Court analyzes the SORNA statute under the second prong of Lopez, as the statute requires that the person travel "in interstate or foreign commerce."

6

even though the threat may come only from intrastate activities." Id. The express language of SORNA dictates that violations under SORNA, for failing to register, require either that the person is convicted of a violation of a federal law or, if otherwise required to register under SORNA, travel in interstate or foreign commerce. See, 18 U.S.C.A. § 2250 (a)(1) and (2)(A) and (B). In this sense, SORNA is very similar to those cases involving a felon in possession of a firearm in violation of Title 18, U.S.C. § 922(g). Under that statute, the Eleventh Circuit has consistently held that a person may be convicted of a federal crime for possessing a firearm that has traveled in interstate commerce, despite the fact that the person never possessed the firearm during the time that the firearm traveled across state lines. See, U.S. v. Clay, 355 F. 3d 1281, (11th Cir. 2004)(reiterating that under § 922(g), the government may satisfy the criminal jurisdictional "in commerce" requirement by proving that the firearm traveled through interstate commerce).

Thus, SORNA's requirement that the Defendant travel through interstate commerce prior to being subject to the registration requirements of SORNA, is a valid exercise of Congress' commerce power to regulate, "the instrumentalities of interstate commerce, or persons or things in interstate commerce." Sorna therefore provides the jurisdictional foundation pursuant to the Commerce Clause for the Defendant to be prosecuted under SORNA. Cf. United

7

States v. Lopez, 514 U.S. 549, 562, 115 S.Ct. 1631 (1995)(opining that statute exceeded Congress' commerce clause power where statute failed to provide jurisdictional element to implicate interstate commerce). Accordingly, Defendant's arguments to the contrary are without merit.

### C. Ex Post Facto Violation

Defendant next asserts that the application of SORNA, in this factual scenario, violates the Ex Post Facto clause of the Constitution as the Attorney General's statement regarding the retroactive applicability of SORNA was not issued until February 28, 2007, after the Defendant traveled in November of 2006.

Various district courts have grappled with this very question and have arrived at differing conclusions as to whether the application of SORNA presents an Ex Post Facto violation for those persons who were convicted of a sex offense prior to SORNA's enactment on July 27, 2006, and traveled after that date and before the Attorney General's February 28, 2007 statement regarding SORNA's retroactive application. Several courts have held, based upon the Supreme Court's ruling in Smith v. Doe, 538 U.S. 84, 123 S. Ct. 1140 (2003), that the registration requirements under SORNA are not punitive in nature and therefore do not violate the Ex Post Facto Clause of the Constitution. See e.g., U.S. v. Madera, 474 F.Supp.2d 1257 (M.D. Fla. 2007), United States v. Kelton, 2007 WL 2572204, slip op. (M.D.Fla. Sept. 5, 2007), United States v. Hinen,

487 F.Supp.2d 747 (W.D.Va. 2007); United States v. Hulen, 2007 WL 2343884, slip op. (W.D.Ark. Aug. 15, 2007); United States v. Sawn, 2007 WL 2344980, slip op. (W.D.Va. Aug. 15, 2007); United States v. Gonzales, 2007 WL 2298004, slip op. (N.D.Fla. Aug. 9, 2007); United States v. Mason, 510 F.Supp.2d 923 (M.D.Fla. 2007); United States v. Templeton, 2007 WL 445481, slip op. (W.D.Okla. Feb. 7, 2007).

However, this Court finds those courts' reliance on the Supreme Court's holding in Smith v. Doe misplaced. In particular, Smith v. Doe involved a 42 U.S.C. § 1983 challenge by two convicted sex offenders who were required to register under the Alaska Sex Offender Registration Act, not a criminal prosecution. Thus, while the Supreme Court found that the registration requirements under the Alaska statute were not punitive in nature, the Court never addressed the question of whether a separate proceeding for a criminal prosecution for failure to comply with the statute could run afoul of the Constitution, if applied retroactively. See, Smith at 1152.

Further, in Smith, the Supreme Court engaged in a two-prong analysis to determine whether the statute was punitive or civil in nature. The Court first ascertained whether the intent of the legislature in enacting the statute was punitive or civil, and then examined whether the statutory scheme had a punitive effect, notwithstanding the legislature's intent. Smith, at 1146-47. After first concluding that the Alaska Legislature's intent in enacting

the statute was non-punitive, the Court then held that the statute was also not punitive in its effect, stating "[t]he Act imposes no physical restraint, and so does not resemble the punishment of imprisonment which is the paradigmatic affirmative disability or restraint." Id. Thus, the instant case is clearly distinguishable from Smith. Leaving aside the issue of whether the legislative intent of SORNA was non-punitive, the effect of SORNA, as applied in this matter, clearly is punitive as the Defendant stands to face incarceration, if convicted.

Accordingly, this Court follows the reasoning set forth in those courts which conclude that a criminal prosecution initiated for a defendant's failure to comply with SORNA's mandatory registration requirements, may, in certain circumstances, constitute a violation of the Ex Post Facto clause. See e.g., U.S. v. Smith, 481 F. Supp.2d 846 (E.D. Mich. 2007)(distinguishing Smith v. Doe, and finding that Ex Post Facto violation occurred under SORNA where defendant was convicted and traveled in interstate commerce prior to SORNA's July 2006, enactment); U.S. v. Beasley, 2007 WL 3489999 (N.D. Ga., Oct. 10, 2007)(holding Smith v. Doe inapplicable to criminal prosecution of defendant who was convicted prior to SORNA's enactment and traveled after its enactment date); accord, U.S. v. Wilson, 2007 WL 3046290 (D. Utah October, 16, 2007); U.S. v. Stinson, 507 F. Supp.2d 560 (S.D.W. Va. 2007).

However, notwithstanding the foregoing, the Court finds that

Defendant's Ex Post Facto attack on SORNA nevertheless fails as SORNA was not applied retroactively to the Defendant, in this factual scenario. In this regard, the Court finds the reasoning set forth in U.S. v. Beasley, 2007 WL 3489999 (N.D. Ga., Oct. 10, 2007), to be persuasive. In Beasely, the district court faced a factual scenario akin to the case sub judice, and stated,

> The plain language of SORNA set forth in § 16913(a) requires a sex offender to register and keep his registration current in the jurisdiction where he resides and works. As the Act was signed into law on July 27, 2006, a plain reading of § 16913(a) leads to the conclusion that any sex offender who did not so register after July 27, 2006, was not in compliance with the Act's registration requirements. Nothing in § 16913(d), the delegation to the Attorney General, changes that result.

Id. at *5. The Court then examined the language of 16913 (d) and concluded that the section was ambiguous as it was subject to two different interpretations as follows:

> An additional possible meaning of subsection (d) is that past offenders ("offenders convicted before the enactment of this Act") are included within (and not a separate group from) the broader category of "sex offenders who are unable to comply with subsection (b)," and it is only as to those "sex offenders who are unable to comply with subsection (b)" that the Attorney General was given authority under subsection (d) to issue clarifying regulations.

Id. The Beasley Court then resolved the ambiguity of section (d) by examining the title of the section and concluded,

> Once the title is considered, the ambiguity in the one sentence text that follows the descriptive title is resolved, and it becomes clear that subsection (d) only applies to initial registration. This construction makes sense when one considers that a sex offender convicted

11

>before July 27, 2006, would, in many cases, be unable to comply with the initial registration requirements of SORNA because the time limits for initial registration would have already passed when SORNA was enacted.

Id. (emphasis added).

The Court then cited other cases that had reached the same conclusion regarding the scope of the Attorney General's power pursuant to § 16913(d) and concluded that the defendant, in that matter, was required to register under SORNA for travel that occurred after July 27, 2006, notwithstanding the Attorney General's statement on February 28, 2007, due to his conviction that occurred prior to SORNA's enactment. Id. at *8.

Similarly, in U.S. v. Ambert, 2007 WL 2949476 (N.D. Fla. 2007), the district court acknowledged that courts were split on the issue of whether the application of SORNA to a sex offender convicted prior to SORNA's enactment, who traveled before the Attorney General's February 28, 2007 statement, constituted a violation of the Ex Post Facto clause.  Although, the court in Ambert declined to reach the issue as the Defendant in that matter traveled after the February 28, 2007 proclamation was issued by the Attorney General, the court, in addressing the defendant's arguments regarding Congress' intent of making SORNA retroactive, stated, "...Congress did intend for SORNA, as enacted on July 27, 2006, to be retroactive.  Congress only delegated to the Attorney General the authority to promulgate a rule that applies to people who are unable as of July 27, 2006 to register in their state." Id.

at *6.

This Court agrees with the reasoning of the Beasley and Ambert courts that SORNA's registration requirements applied retroactively from the date of its enactment in July of 2006. Further, the Court agrees that the Attorney General's authority under section (d) of 16913, is "...very narrow in scope: only those...unregistered offenders literally unable to comply with [initial registration] because of the age of their convictions are within the grey area which the Attorney General is authorized to illuminate by rule." See, U.S. v. Roberts, 2007 WL 2155650 at *2 (D.Kan., July 26, 2007).

As to the ambiguity of 16913 section (d), again this Court agrees with the ruling in Beasley, and concurs that the Eleventh Circuit has held repeatedly that section headings maybe used to interpret a statute when the statute is ambiguous. See, e.g., United States v. Ferreira, 275 F.3d 1020, 1029 (11th Cir.2001); Scarborough v. Office of Personnel Mgmt., 723 F.2d 801, 811 (11th Cir.1984). Accordingly, given that the title heading of section (d) states "Initial registration of sex offenders unable to comply with subsection (b) of this section", it is clear that this section, and hence the Attorney General's power to determine the retroactive applicability of SORNA, is limited to those instances where a sex offender is unable to initially comply with the registration requirements of SORNA. Therefore, the Defendant's

argument that, "[SORNA] cannot be applied to Defendant's failure to register, first because he never had to register when convicted...." is incorrect. The Defendant was able to comply with SORNA's initial registration requirements when he was convicted and released in Arizona, and thus does not fall into the limited exception contemplated by section 16913(d).

Thus, SORNA, as applied to the Defendant herein, raises no Ex Post Facto violation as the Defendant was required to register upon his arrival in Florida, in or about November of 2006. Nothing in any rule or statement by the Attorney General issued thereafter alters this fact.

### C. Non-Delegation Violation

The Defendant also asserts that the Indictment should be dismissed as it violates the Non-Delegation clause. The Defendant argues that SORNA allows the Attorney General to determine the retroactive application of the Statute which is a duty delegated to Congress, not the Executive Branch and thus impinges on the separation of powers contemplated by the Constitution.

However, as discussed above, this Court does not read SORNA as empowering the Attorney General to determine the retroactive application of SORNA, *in toto*, but rather only permits the Attorney General to issue regulations with respect to those persons who are unable to comply with the "initial registration" requirements of § 16913(b). Thus, under this interpretation, there is no violation

14

of the Non-Delegation clause.

### D.   Due Process Violation

Similarly, given the above analysis, the Defendant's due process rights have not been violated as Defendant was on notice as of July 27, 2006, when SORNA took effect, that he was required to comply with the registration requirements of SORNA, if he traveled to another state.  Further, the Eleventh Circuit has previously rejected such challenges to sex offender registration requirements. See Doe v. Moore, 410 F. 3d 1337 (11th Cir. 2005).  Defendant's arguments fail on this ground, as well.

### III.   CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Indictment [D.E. 18] is hereby **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of December, 2007.

DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record